**Joseph M. KLINE, and Mary P. Kline, Administrator and Administratrix of the Estate of Stephen P. Kline, Plaintiffs,**

**v.**

**Paul E. MARTIN, Defendant.**

**Civ. A. No. 173-71-A.**

United States District Court,
E. D. Virginia,
Alexandria Division.

June 15, 1972.

Laidler B. Mackall, Steptoe & Johnson, Washington, D. C., Plato Cacheris, Alexandria, Va., for plaintiffs.

James A. Welch, Welch, Daily & Welch, Washington, D. C., Henry R. Furr, Mountfort, Furr & Mee, Falls Church, Va., for defendant.

Thomas W. Reilly, Federal Aviation Administration, Washington, D. C., for Federal Aviation Administration.

## MEMORANDUM OPINION AND ORDER

Albert V. Bryan, Jr., District Judge.

During discovery depositions in this action for the wrongful death of a passenger in an airplane which crashed in a

remote region of Alaska · on June 27, 1970, the plaintiff propounded certain questions to Lawrence Campbell, an Air Safety Investigator employed by the National Transportation Safety Board (NTSB), and to Edward Johnson, a General Aviation Operations Inspector employed by the Federal Aviation Administration (FAA), the two men who conducted the federal investigation at the scene of the crash. Neither of these agencies nor the United States is a party to this action. A copy of the transcript of the questions asked and the objections to the questions are appended hereto.

Plaintiff now moves the Court for an order compelling the witnesses to answer these questions and further to answer "whatever additional questions are necessary to get full and responsive answers to the original questions." In the alternative, the plaintiff seeks an order requiring the NTSB to produce Campbell at trial.

The NTSB is the successor to the Civil Aeronautics Board (CAB) insofar as responsibility for investigation of accidents involving civil aircraft is concerned. 49 U.S.C. § 1655(d). It argues that the testimony requested is barred by the prohibition of 49 U.S.C. § 1441(e) that "no part of any report or reports of the Board relating to any accident or the investigation thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports." The Board also points to 14 CFR § 435 which limits the testimony of investigators to facts actually observed by them. It stresses the opinion nature of the testimony and contends that the only way to give adequate effect to and fulfill the purpose of 49 U.S.C. § 1441(e) is to exclude all evaluation evidence, citing a footnote in Israel v. United States, 247 F.2d 426, 429 (2nd Cir., 1957), and Fidelity and Cas. Co. of New York v. Frank, 227 F.Supp. 948 (D.C.Conn., 1964).

The Court finds the reasoning of American Airlines, Inc. v. United States, 418 F.2d 180 (5th Cir., 1969) persuasive, although the rule enunciated by it is not as easily applied as the total prohibition against "all evaluation, opinion and conclusion evidence" of Fidelity & Cas. Co. of New York v. Frank, *supra*. The *American Airlines* rule, which prohibits only conclusory opinions as to the ultimate issue of probable cause of the accident, seems more consistent with the policy considerations which prompted the enactment of 49 U.S.C. § 1441(e), namely, "to guard against the introduction of C.A.B. reports expressing agency views about matters which are within the functions of courts and juries to decide." Lobel v. American Airlines, Inc., 192 F.2d 217, 220 (2nd Cir., 1951). The only prohibition of the statute is against use of the *report* "of the Board." Despite the statement in Berguido v. Eastern Airlines, Inc., 317 F.2d 628, 632 (3rd Cir., 1963) that "Of necessity, the opinion testimony of the CAB's investigators would also come within this rule," the statute does not go that far. Even if it does, however, it is only the ultimate issue, the probable cause of the accident, that is prohibited.

The FAA is not covered by 49 U.S.C. § 1441(e), but argues that its regulations, 49 CFR §§ 9.7, 9.11 and 9.13 prevent the witnesses answering the questions and that, under the Federal Rules, only facts are to be elicited from witnesses, not opinions.

While the reasons listed in § 9.7 of the regulations are commendable, they do not, in the opinion of the Court, outweigh the need to make available to the litigants in a civil suit all information about the cause of the accident. In the interest of discovering the truth and insuring a just result in civil litigation, this latter consideration is paramount.

The inconsistency of the FAA's position is exemplified by the suggestions in its memorandum as to how the information sought can be obtained by rephrasing the questions. This argument promotes form over substance and is not persuasive. Federal Rules contemplate the broadest discovery possible in the search for the truth. Here the only in-

vestigation conducted shortly after the accident happened was conducted by Johnson and Campbell. To limit their testimony to the extent the United States requests would cut off the primary avenue to the truth. The witnesses should be allowed to testify even if it involves their opinions, so long as the opinion is not as to the ultimate conclusion of cause of the accident.

The questions addressed to Johnson regarding preimpact malfunction or failure of the aircraft (Questions 10 and 11) and incapacitation of the pilot (Question 12) need not be answered. Similar questions to Campbell (Questions 3, 4 and 8) need not be answered. Questions 5 and 7 to Campbell inquiring as to "causation of the crash" need not be answered. All other questions and ones similar to them must be answered.

It is so ordered.

EXHIBIT A

QUESTIONS MR. JOHNSON NOT PERMITTED TO ANSWER

1. Q. All right. What are the requirements for maintaining visual flight rules?

MR. SHAYKIN: I am going to have to object to that, that calls for an expert opinion from the witness, and instruct the witness not to answer.

2. Q. (By Mr. Opland) As a commercial pilot, do you know what is required for maintaining visual flight rules?

MR. SHAYKIN: I am still going to object to that question. It calls for an expert opinion testimony and instruct the witness not to answer.

3. Q. (By Mr. Opland) Do you know what the requirements are for maintaining visual flight rules?

MR. SHAYKIN: Same objection, same—

MR. OPLAND: Do you mean he can't even state whether he knows?

MR. SHAYKIN: It calls for an opinion, counsel. (J–21)

4. Q. (By Mr. Opland) There are numbers on the document [flight strip record] which read D 1705. What does that mean?

MR. SHAYKIN: Now you are asking this witness for an opinion and I will object and instruct him not to answer.

5. Q. (By Mr. Opland) What does the letter "D" in that context mean, sir?

MR. SHAYKIN: Same objection.

MR. OPLAND: Excuse me. Are you objecting or are you instructing?

MR. SHAYKIN: I'm objecting and instructing. (J–32)

6. Q. (By Mr. Opland) Did you locate the physical point of impact of the air crash?

MR. SHAYKIN: I am going to object to that question insofar as it would call for a conclusion on the part of the witness. (J–41)

7. Q. What, if anything, did you see on this aircraft that would have indicated the presence of fire after impact?

MR. SHAYKIN: Objection. That calls for an opinion on the part of the witness, and the witness is instructed not to answer. (J–48)

8. Q. Did the clock in the aircraft give any factual information, any indication of impact?

A. I recall—

9. Q. The time of impact. Excuse me.

MR. SHAYKIN: Wait. I'll object to that as to whether the clock gave any indication of time of impact. (J–49)

10. Q. (By Mr. Opland) Did the facts you learned indicate that there was no preimpact malfunction or failure of the aircraft?

MR. SHAYKIN: Object. Opinion. And instruct the witness not to answer the question.

11. Q. (By Mr. Opland) What specific facts did you learn indicative, or not indicative, of preimpact malfunction or failure of the aircraft?

MR. SHAYKIN: Object, same instruction.

12. Q. (By Mr. Opland) Did the facts that you learned indicate that there was evidence of incapacitation of the pilot?

MR. SHAYKIN: Object, and instruct the witness not to answer. (J–62)

## QUESTIONS MR. CAMPBELL NOT PERMITTED TO ANSWER

1. Q. Now, you testified that the first leg of the—your investigation revealed the first leg of the flight was from Fairbanks to Northway, and the second leg from Northway to White Horse was the intended course of flight; is that correct?

A. That's correct.

2. Q. At the—is the site of the crash on course for the second leg?

MR. EDWARDS: I think that this would require the witness to form a conclusion and I think it would be inappropriate for him to answer.

3. Q. (By Mr. McVeigh) Did you find any evidence that the aircraft malfunctioned before the crash?

MR. EDWARDS: I would also advise the witness not to answer the question. (C. 27–28)

4. Q. Did you find any evidence of incapacitation of the pilot of the aircraft?

MR. EDWARDS: I would advise him not to answer that as this requires him to form a conclusion and testify as an expert witness. (C. 30)

5. Q. Did you find any evidence that would indicate the—what happened to cause the crash? (C–35)

MR. EDWARDS: To the extent the witness can answer that question yes or no, I would have no objection, but to the extent that you pursue it beyond that, I would object on the grounds previously stated.

6. Q. (By Mr. McVeigh) All right. Can you answer the question yes or no?

A. Yes. (C–36)

7. Q. (By Mr. McVeigh) Let me rephrase the question. Did you find evidence of the causation of the crash? I believe your counsel instructed you could answer yes or no, and that that would be as far as it would go. Is that correct? (C–36)

MR. EDWARDS: I think that also you get into an area of asking him a question that requires his formulation of an opinion. Determination of cause based—albeit based upon evidence, it nonetheless requires the formulation of opinions and conclusions, and I think that we will be getting into an area that we will have to advise Mr. Campbell not to answer.

8. Q. (By Mr. McVeigh) Did you find any evidence to the ordinary observer that there was a malfunction in flight of the aircraft?

MR. EDWARDS: I would have to advise Mr. Campbell not to answer that question on the same basis as indicated before. (C–37)

8. Q. (By Mr. McVeigh) Did you find any evidence that the air-

craft was not intact at the time of impact?

MR. EDWARDS: I would have to advise Mr. Campbell not to answer that question on the same basis as indicated be-

10. Q. And did you determine the angle that the aircraft struck the mountain?

MR. EDWARDS: I would advise the witness not to answer that on the same basis. (C–39)