**Will Key JEFFERSON, and Hitchinrail Duplex Apartments, Appellants,**

v.

**METROPOLITAN MORTGAGE AND SE-CURITIES COMPANY OF ALASKA, INC., Appellee.**

No. 1438.

Supreme Court of Alaska.

Dec. 15, 1972.

Will Key Jefferson, pro se.

## OPINION

Before RABINOWITZ, C. J., and CONNOR and BOOCHEVER, JJ.

CONNOR, Justice.

Will Key Jefferson and the Hitchinrail Duplex Apartments appeal from a superior court judgment foreclosing their interest in certain property in Anchorage [hereinafter referred to as lot 4] and quieting title in the Metropolitan Mortgage and Securities Company.

In order fully to understand the background of the present appeal, it is necessary to trace the rather complex legal history of lot 4 over the last thirteen years.

On August 17, 1959, Walter Kenyon purchased lot 4 from the appellee, Metropolitan Mortgage and Securities Company of Alaska. Kenyon subsequently gave Jefferson an option to purchase the property on May 31, 1964. Jefferson was to pay off two mortgages on the property, including that held by Metropolitan, and make certain payments to Kenyon. Kenyon brought suit against Jefferson on July 20, 1965, claiming that although Jefferson had taken possession of the property, he had made none of the payments which were then long overdue. Kenyon sought to recover possession of the property.

In order to facilitate transfer of the property and payment of the amount due Kenyon and the mortgagees, the court on October 6, 1966, ordered that two deeds be placed in escrow with the First National Bank of Anchorage, one from Metropolitan to Kenyon and the other from Kenyon to Jefferson. Upon payment of the amounts due Kenyon and Metropolitan, the escrow was to be dissolved and the deeds recorded. Should Jefferson fail to pay the amount due within 90 days of the date of judgment, he would forfeit all of his interest in the property and Kenyon could foreclose. The court also stated that Jefferson could direct the manner in which the second deed (from Kenyon to Jefferson) should convey the property.

On the last day of the redemption period, Kenyon sought foreclosure on the property, Jefferson having failed to pay the money owing. At the same time Jefferson notified Kenyon that he had assigned his right in the property to Hitchinrail Duplex Apartments, a partnership in which Jefferson is a member.

Jefferson defended against the foreclosure on the ground that Kenyon had not changed the name of his grantee from Jefferson to Hitchinrail. The matter ended amicably with Jefferson purchasing Kenyon's interest in the property on January 13, 1967. Jefferson dropped his claims against Kenyon and apparently his request that Kenyon change the grantee's name.

On February 27, 1967, the Anchorage Borough foreclosed on lot 4 for failure to

pay taxes. On March 1, 1970, the Hitchinrail partnership conveyed its interest in lot 4 to Albert S. Porter. At the same time Porter agreed to lease the property to Jefferson and his Hitchinrail partnership with a five-year option to purchase the property. A month later on April 8, 1970, the Anchorage Borough issued a tax deed to Albert S. Porter on the basis of his statutory right of first redemption as record owner of the property.

On June 26, 1969, after the tax foreclosure but before the conveyance of the property to Porter, Metropolitan filed suit against Jefferson to foreclose its mortgage on the property. Jefferson had not made any payments on the mortgage since September 6, 1966, and $1,248.54 remained due.

The trial date was set for May 18, 1970, in Anchorage. On the morning of the 18th, the calendar clerk received a call from an unidentified person who informed the court that Jefferson could not attend the trial as he was hospitalized in Seattle. No details were given concerning the stay in the hospital, and there was no application for a continuance. The court decided to allow Metropolitan Mortgage to put on its case. In the event that Jefferson had a "compelling medical reason", a new trial could be held. Otherwise the default judgment entered against Jefferson could stand. The City of Anchorage and various other creditors of Jefferson, joined as defendants by Metropolitan, did not appear and a default judgment was also entered against them.

The court subsequently accepted Jefferson's medical excuse and on July 30, 1970, the parties appeared in court again for a new trial. Although the judge stated specifically that the proceeding was a new trial, he excused Metropolitan from putting on its witnesses again. The only evidence before the court at this second proceeding was the record from the 1965 foreclosure

proceeding, Kenyon v. Jefferson, No. 65–1188B, offered into proof by Metropolitan, and Jefferson's own testimony.

Finding Jefferson in default of the underlying contract between Kenyon and Metropolitan of August 17, 1959, the court held that if Jefferson did not redeem the property within 60 days of the judgment by payment of the money owing, the property would be foreclosed and the title quieted in Metropolitan. Jefferson did not redeem the property.

Albert S. Porter, holding the tax deed from the borough, sought to intervene in the proceeding after the judgment was entered and shortly before the decree of foreclosure was issued. His motion was denied on December 22, 1970.

Appellants raise three points on appeal: (1) the court's consideration of evidence introduced at the first hearing in appellant Jefferson's absence denied appellant Jefferson his due process right to confront and cross-examine the witnesses against him; (2) appellee's interest in the property was terminated by the Anchorage Borough's foreclosure on the property for failure to pay taxes; and (3) the court's denial of Albert Porter's motion to intervene was error.

I

It is a fundamental precept of common law that before testimony may sustain a cause of action it must be subject to cross-examination. The right of trial necessarily confers the right to confront and cross-examine adverse witnesses.[1] Therefore, had the trial court's decision rested upon evidence presented by Metropolitan at the first hearing—while Jefferson was hospitalized and unable to be present—Jefferson's due process claim would prevail. We find, however, that sufficient evidence was introduced independently at the second hearing to support

1. Tumbleson v. Tumbleson, 117 Ind.App. 455, 73 N.E.2d 59 (1947) ; *also see* Pavaroff v. Pavaroff, 130 P.2d 212, 213 (Cal. App.1942) ; Lambert v. Bunge Corporation, 169 So.2d 207, 209 (La.App.1964) ; American Nat. Ins. Co. v. Fress, 142 S.W.2d 531, 533 (Tex.Civ.App.1940).

a judgment against appellants. At the beginning of the second hearing, the judge stated that the proceeding was a new trial, and the final judgment in the present case refers only to the trial on July 30th.[2]

The evidence supporting Metropolitan Mortgage's complaint introduced at the second trial was the transcript and record from Kenyon v. Jefferson, No. 65–1188B, and Jefferson's own testimony. The record from Kenyon v. Jefferson showed that Jefferson was overdue in his payments to Metropolitan, and he admitted at the July hearing that he had not paid the amount Metropolitan claimed was overdue. This would be sufficient to support the present judgment, absent a valid defense to the nonpayment.

Jefferson offered two defenses. The first—that he had tendered the money conditioned on Metropolitan's changing the grantee to Hitchinrail as required by the *Kenyon* judgment—was rejected by the superior court. Metropolitan, it held, was not responsible under the *Kenyon* decree for the deed from Kenyon to Jefferson, having properly placed its deed to Kenyon in escrow. We agree that Metropolitan had no control over the terms of the second deed. There was no error on this point.

## II

Jefferson's second defense to his failure to pay Metropolitan and his second contention on appeal is that the Anchorage Borough's tax foreclosure of lot 4 cut off all liens on the property, including the mortgage held by Metropolitan.

■ The general rule in Alaska and the great majority of jurisdictions is that when a municipality forecloses on property for failure to pay taxes, it receives a new title to the property free from all encumbrances.[3] A buyer of the property at the subsequent tax sale receives a new, independent title and not that of the former owner.[4] It is also the law in Alaska, as in most jurisdictions, that the record owner of the property has a certain term in which he can redeem the property by paying the delinquent taxes plus interest.[5] And in Alaska, even after this time for redemption has run, the record owner may still purchase the property by paying the delinquent taxes, so long as the property has not yet been sold to a third party at a tax sale.[6]

■ Obviously it would be most unfair to holders of liens on the property if the owner of record could gain a clear title by the simple, albeit devious, expedient of not paying his taxes and then repurchasing the property by paying the delinquent taxes at a tax sale. Courts have not allowed mortgagors to avoid their obligations in this manner. It is the general rule that when the owner of record redeems or repurchases his property, his purchase merely operates as a payment of the taxes and he receives the same title he held before the municipality's foreclosure.[7] Nor can he evade the purpose of this exception by allowing the property to be sold to a third

2. Appellee prepared a findings of fact and conclusions of law and a judgment dated August 6, 1970, which made reference to the May hearing. A second set of findings and a new judgment was soon substituted for the first which referred only to the hearing held on July 30.

3. AS 29.10.531 reads in part:
 "When a city acquires real property under foreclosure procedure the conveyance vests in the city title to the property, free from all liens and encumbrances . . . ."

4. Teget v. Lambach, 226 Iowa 1346, 286 N.W. 522, 526 (1939).

5. AS 29.10.507.

6. AS 29.10.528.

7. Koch v. Kiron State Bank of Kiron, 230 Iowa 206, 297 N.W. 450, 464–466 (1941); Moore v. Kuljis, 207 So.2d 604, 614 (Miss. 1968); Crane v. Taylor, 261 P.2d 587, 589 (Okl.1953); McKinnon v. Bradley, 178 Or. 45, 165 P.2d 286, 290–291 (1946); Morris v. Lambert, 218 S.C. 384, 62 S.E.2d 841, 844 (1950); Annot., 52 L.R.A. 878 (1914); Annot., 74 Am.St. Rep. 229 (1899).

person and then buying from him, or by any other arrangement which would directly or indirectly defeat the operation of the rule.[8]

At the July hearing the only evidence concerning the tax foreclosure and sale was introduced by Jefferson himself. According to Jefferson, Porter was an independent third party who first obtained his interest in the subject property by purchasing it at the tax sale. The court, understandably puzzled as to why Jefferson even bothered to defend against the foreclosure, asked him what his interest was in the property. Jefferson replied that he was leasing the property from Porter and that Metropolitan would terminate his lease if it succeeded in foreclosing on the property. But Jefferson failed to mention that Porter had purchased the property from him a month before receiving the deed from the borough and that the deed from the borough was consequently given to Porter under his right of redemption as the owner of record of the property. Nor did Jefferson mention that Porter had given him and his Hitchinrail partnership a five-year option to buy the property.

 Despite the limited record before the court concerning the tax sale, the lower court properly rejected Jefferson's argument that the tax foreclosure terminated appellee's interest in the property. Irrespective of whether Porter was an independent purchaser at the tax sale, Jefferson may not perfect his own title to the subject property by failing to pay his taxes and either directly or mediately repurchasing the property at a tax sale.[9]

### III

The final contention on appeal is that it was error to enter a decree of foreclosure while Albert Porter's motion to intervene was still pending. Appellants claim that Porter, who was not a party to the action, will be bound by the decree as a successor of the Borough of Anchorage.

 We uphold the decision of the superior court to deny Porter's intervention as untimely. The judgment was entered on August 21st, but the motion to intervene was not made until the following November 23rd, just prior to the decree of foreclosure. The decree of foreclosure was entered December 7, 1970. Porter explained his failure to intervene earlier on the ground that he was unaware, until he read the proposed decree of foreclosure, that both the Borough of Anchorage and he, as the borough's successor, would be bound by the judgment. The August 21st judgment included Jefferson, the Hitchinrail Duplex Apartments, their successors and assigns. The foreclosure decree, however, included the "defendants" and their successors and assigns. Since the Borough of Anchorage was a defendant in the action, the appellant argues that Porter's interest in the property was also foreclosed by the decree, as he was a successor of the borough. The Borough of Anchorage was named as a defendant throughout the action. But if Porter actually is an independent third party who purchased the property at a tax sale, as appellant claims, his interest in the property would not be affected by the decree in this case. As a general rule the purchaser of property at a tax sale receives a new title free from all encumbrances.[10] If Jefferson's contentions are correct, Porter's interest in the property would not be foreclosed by the action against Jefferson and the Hitchinrail partnership, because it is a well established rule of law that if a person has an interest in property and is not joined in a foreclosure suit, his interest cannot be affected by a decree of foreclosure.[11]

Affirmed.

ERWIN, J., not participating.

---

8. Koch v. Kiron State Bank of Kiron, 230 Iowa 206, 297 N.W. 450, 464–466 (1941) ; Crane v. Taylor, 261 P.2d 587, 589 (Okl.1953) ; Annot., 52 L.R.A. 878 (1914).

9. Cases cited note 7 *supra*.

10. Teget v. Lambach, 226 Iowa 1346, 286 N.W. 522, 526 (1939).

11. 5 H. Tiffany, The Law of Real Property § 1534 (3d. ed. 1939) ; G. Osborne, Handbook on the Law of Mortgages § 321 (2d. ed. 1970).