FILED
United States Court of Appeals
Tenth Circuit

December 14, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TERRY MINTER,

        Plaintiff - Appellant,

v.

PRIME EQUIPMENT CO., a Texas
corporation,

        Defendant - Appellee.

No. 07-7089
(E.D. Okla.)
(D.C. No. 6:02-cv-00132-KEW)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

Terry Minter was rendered a paraplegic following a workplace accident in which

he fell from a scissor lift[1] owned by G&G Leasing. Minter settled with all defendants

except Prime Equipment Company ("Prime"), who sold the lift to G&G Leasing after

purchasing it from its original manufacturer and modifying it by replacing a safety

_____

[*]This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished). *Id.*

[1] A scissor lift is "a type of industrial lift that raises and lowers a platform used for
work positioning." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1197 (10th Cir. 2006).

guardrail with a length of chain. Minter proceeded to trial against Prime; that trial ended in a defense verdict on Minter's failure to warn theory. Minter appealed and we remanded. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196 (10th Cir. 2006). A second trial was held on Minter's product liability theory. The jury returned a verdict for Prime. Minter appeals from that verdict alleging three evidentiary errors. He claims the court erred by: (1) excluding manufacturer liability as a basis for recovery; (2) granting Prime's mid-trial motion in limine to exclude evidence supporting Minter's "but for" theory of causation; and (3) refusing to allow Minter to introduce into evidence two of Prime's responses to Minter's requests for admission. We affirm.

## I.    BACKGROUND[2]

On July 14, 1996, Minter, an experienced painter, was using a scissor lift owned by G&G Leasing to enable him to paint a ceiling at a worksite. **[Vol. II at 271]** While working atop the lift, Minter stepped off the side of the lift platform and fell approximately twenty feet to the ground. **[See 451 F.3d at 1197]** "The impact fractured his skull, damaged his spinal cord, and resulted in permanent paralysis from the waist down." *Id.* at 1197.

The lift from which Minter fell was manufactured in 1987 by Economy Company ("Economy"). **[Id.; Vol. I at 108; Vol. III at 559]** Economy sold the lift to a predecessor of Prime that same year. **[Vol. I at 168, 185, 186; Vol. III at 559]** When Prime purchased the lift, it contained a solid metal guardrail around the top perimeter of

---

[2] We discussed the factual and procedural history of this case in detail in our earlier decision. *See Minter*, 451 F.3d at 1197-1203. Here, we review only those facts most relevant to the issues presented.

the lift platform and a length of chain around the mid-level of the platform. **[Vol. I at 109, 115]** Prime replaced the solid guardrail with a length of chain. **[Vol. I at 137]** When properly latched, the chain completed the top rail of the railing system. Prime sold the modified lift to G&G Leasing in August 1991. **[Vol. I at 135, 136, 177]** Both the top and mid-level chains were found unlatched after Minter's accident.[3]

Minter filed an action in federal court against Prime and Economy.[4] **[Vol. IV at 626]** Prior to trial, Minter notified Prime he intended to include a product liability claim against it based on its removal of the solid guardrail. Three days before trial, the court granted Prime's motion to strike the new product liability claim from the pretrial order. Minter settled with Economy on the eve of trial. Thus, the only claim remaining to be tried was Minter's failure to warn claim against Prime. Before opening statements, Minter again tried to add a product liability claim against Prime based on the alterations it made to the lift. He filed a motion to amend the pleadings to conform to the evidence. The court determined it could not rule on the motion because no evidence had yet been presented. At the close of Minter's case, the court denied Minter's motion. The jury ultimately returned a verdict in favor of Prime. **[Vol. IV at 638]**

Minter appealed, arguing, *inter alia*, the district court erred by granting Prime's

---

[3] Minter claims he fastened the top chain but three individuals who observed the lift following the accident testified neither chain was fastened. **[Vol. II at 277; Vol. III at 441-42, 453, 470]**

[4] Minter had previously filed an action in Oklahoma state court against Prime, Economy and five other defendants. After four years of litigation, Minter settled with the five other defendants, leaving complete diversity of citizenship between himself and the remaining defendants—Prime and Economy. Minter voluntarily dismissed his state court complaint in order to refile in federal court. **[See 451 F.3d at 1198-99]**

motion to strike the product liability claim from the pretrial order and by denying Minter's motion to amend the pleadings. We concluded the court abused its discretion by denying Minter's motion to amend the pleadings and remanded for a new trial on Minter's product liability claim. *Minter*, 451 F.3d at 1214. We found no error in the district court's evidentiary rulings and affirmed the jury verdict on Minter's failure to warn claim. *Id.*

On remand, the case was tried for a second time—this time on Minter's product liability claim. Minter argued the accident was caused by a defect in the lift— specifically, the lack of a solid guardrail. **[Vol. III at 559]** He argued his accident would not have occurred but for Prime's modification to the lift. Prime acknowledged it modified the lift by removing the solid guardrail but argued the lift was not defective with the dual chain entry and the accident was caused by Minter's failure to latch the two chains. **[Id. at 560]**

Both Minter and Prime relied heavily on expert testimony to support their respective positions. Minter called Lyle Grider, who designed the lift with the solid guardrail. **[Vol. II at 366]** On direct examination, Minter asked Grider: "Did the sale of this lift with these alterations make it defective and unreasonably dangerous when sold?" (Appellant's App. Vol. II at 389.) Grider answered: "Yes, it did."[5] (*Id.*) Prime called Charles Mark Recard, who testified the two-chain system was neither defective nor

---

[5] On cross-examination, Grider appeared to contradict his earlier testimony. Counsel for Prime asked Grider: "[I]t's your opinion, sir, that the two-chain system, which has been used since 1966, is not unreasonably dangerous when used properly; is that correct?" (Appellant's App. Vol. II at 396.) He answered: "That's correct." (*Id.*)

unreasonably dangerous.  **[Vol. III at 487-88]**

The court instructed the jury on the elements of a "manufacturers' products liability claim" and neither party objected to the instruction.[6]  (Appellant's App. Vol. III at 564.)  The jury returned a verdict in favor of Prime.  **[Vol. IV at 606]**  Minter filed a timely notice of appeal.

---

[6] The court instructed the jury:

A party claiming damages under manufacturers' products liability has the burden of proving each of the following:

1.  Defendant Prime Equipment Company sold the scissor lift;

2.  Defendant Prime Equipment Company was in the business of selling such products;

3.  The scissor lift was defective and because of the defect, the scissor lift was unreasonably dangerous to a person who uses, consumes, or might be reasonably expected to be affected by the scissor lift;

4.  The scissor lift was defective at the time it was sold by Defendant Prime Equipment Company or left its control;

5.  Plaintiff Terry Minter was a person who used, consumed, or could have reasonably been affected by the scissor lift; and

6.  Plaintiff Terry Minter sustained personal injuries directly caused by the defect in the scissor lift.

A product is defective when it is not reasonably fit for the ordinary purposes for which such products are intended or may reasonably be expected to be used.  A defect may arise out of a chain and latch entry system present on the scissor lift at the time of the sale of the lift by Defendant Prime Equipment Co. to Marrs Electric/G&G Leasing.

(Appellant's App. Vol. III at 564-65.).  This instruction was based on the Oklahoma Uniform Jury Instructions (Civil) §§ 12.1, 12.2.

## II.   DISCUSSION

Minter contends the trial court made three evidentiary errors which "prevented [him] from submitting his claims to the jury." (Appellant's Opening Br. at 3.)  He claims the court erred by: (1) excluding manufacturer liability as a basis for recovery; (2) granting Prime's mid-trial motion in limine to exclude evidence supporting Minter's "but for" theory of causation; and (3) refusing to allow Minter to introduce into evidence two of Prime's responses to Minter's requests for admission.  "We review a district court's evidentiary rulings for an abuse of discretion." *McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1141 (10th Cir. 2006).  "We will not overturn an evidentiary ruling absent a distinct showing that it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *Id.* at 1141-42 (quotations omitted).

> Even assuming the district court abused its discretion in excluding evidence, we must also determine whether the exclusion was harmless error because we will not set aside a jury verdict unless the error prejudicially affects a substantial right of a party.  An error affecting a substantial right of a party is an error which had a substantial influence or which leaves one in grave doubt as to whether it had such an effect on the outcome.  When conducting our harmless error analysis, we review the record as a whole.

*Id.* at 1142 (quotations and citations omitted).  In a diversity action, we apply the substantive law of the forum state—here, Oklahoma.  *Skidmore, Owings & Merrill v. Canada Life Assur. Co.*, 907 F.2d 1026, 1027 (10th Cir. 1990) (per curiam).

Under Oklahoma law:

> [A] party proceeding under a strict products liability theory—referred to as manufacturer's products liability—must establish three elements: (1) that the product was the cause of the injury, (2) that the defect existed in the

- 6 -

product at the time it left the manufacturer, retailer, or supplier's control, and (3) that the defect made the product unreasonably dangerous.

*Gaines-Tabb v. ICI Explosives, USA*, 160 F.3d 613, 625 (10th Cir. 1998) (quotations and citation omitted). There was no question the alleged defect existed at the time the lift left Prime's possession and control. Thus, Minter's task at trial was to prove the lift was defective, the defect rendered the lift unreasonably dangerous, and his injuries were caused by the defective lift.[7] Prime could prevail by establishing Minter voluntarily assumed the risk of a known defect.[8] *See Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1366 (Okla. 1974) (assumption of the risk is a defense to a product liability claim); *see also Hogue v. A. B. Chance Co.*, 592 P.2d 973, 975 (Okla. 1978) ("Under [*Kirkland*] there must be a showing the plaintiff *knew of a defect* unreasonably dangerous in nature, yet voluntarily used the product. Only then is he precluded from recovery under this defense.").

## A.    Manufacturer Liability

Before trial, Minter filed a motion arguing Prime was a manufacturer of the lift on account of its "extensive modifications to the scissor lift." (Appellant's App. Vol. V at

---

[7] The Oklahoma Uniform Jury Instructions state the injury must be "directly caused" by the defective product. Okla. Uniform Jury Instructions (Civil) § 12.1. "Direct cause means a cause which, in a natural and continuous sequence, produces injury and without which the injury would not have happened." *Id.* at § 12.4.

[8] Unlike assumption of risk, contributory negligence is not recognized as a defense in a product liability case. *See Thomas v. Holliday By & Through Holliday*, 764 P.2d 165, 169-71 (Okla. 1988) (discussing the distinction between assumption of risk and contributory negligence); *see also McMurray v. Deere & Co., Inc.*, 858 F.2d 1436, 1440-41 (10th Cir. 1988) (holding the trial court erred in giving instruction on assumption of risk where there was no evidence the plaintiff had knowledge of the risk); *Smith v. FMC Corp.*, 754 F.2d 873, 876 (10th Cir. 1985) (same).

- 7 -

845.) The court denied Minter's motion, explaining: "It is admitted by all parties that no case from an Oklahoma court has found a seller or reseller to be transformed [in]to a manufacturer . . . .  Absent such specific case authority from the State of Oklahoma, this Court will not do so either." (*Id.* at 977.)  The court then held that because Prime is not a manufacturer, it cannot be held to the standards of the American National Standards Institute (ANSI).[9] **[Id. at 978]**  The court also held Minter could not introduce OSHA regulations because Prime was not Minter's employer.[10] **[See id.]**

Minter contends the trial court's refusal "to attempt to predict what the state's highest court would do" prevented him from presenting evidence comparing the safety of the guardrail to the dual chain entry "in the context of feasible alternative design and state of the art."[11] (Appellant's Opening Br. at 30-31.)  However, as the district court recognized, "the issue of manufacturer compliance with industry standards is generally considered to be irrelevant in a strict liability case.  Rather, it relates to the question of the manufacturer's duty of care under a negligence theory." *Rexrode*, 674 F.2d at 831.  This was not a negligence case.  Minter voluntarily dismissed his negligence claim against Prime prior to the first trial.  Thus, whether Prime exercised ordinary care to avoid injury

---

[9] "The American National Standards Institute is an organization which publishes national nonmandatory standards for various products." *Rexrode v. Am. Laundry Press Co.*, 674 F.2d 826, 831 n.14 (10th Cir. 1982).

[10] OSHA regulations impose mandatory standards on employers and employees. *See Rexrode*, 674 F.3d at 831 n.15.

[11] Comparative safety evidence can also be admitted to prove consumer expectations. *See Robinson v. Audi Nsu Auto Union Aktiengesellschaft,* 739 F.2d 1481, 1486 (10th Cir. 1984).  Minter does not argue he sought to introduce the evidence to prove consumer expectations.

is irrelevant.

While evidence regarding industry standards and state-of-the-art designs may be admitted "to try to show the feasibility of other safer alternatives," *Robinson,* 739 F.2d at 1486, the fatal flaw in Minter's argument is that Prime never argued it was not feasible to have a solid top guardrail on the lift. Such an argument would make no sense considering the lift was originally manufactured with the guardrail. Thus, the feasibility of the alternative design was not at issue. Even if the court had deemed Prime to be a manufacturer, Minter would not have been able to introduce evidence of the lift's compliance with ANSI standards.

In opposing Minter's motion, Prime asserted whether it was a manufacturer was "irrelevant." (Appellant's App. Vol. V at 914.) Prime argued:

> If Plaintiff successfully proves the lift as sold by Prime was defective and unreasonably dangerous to the ordinary consumer, caused the fall and plaintiff did not assume the risks of a known defect, there is liability against Prime whether they are deemed a manufacturer, a retailer, a seller or a ham sandwich.

(*Id.* at 915.) We agree with Prime that "it is irrelevant whether Prime was identified as the manufacturer or retailer for the purposes of this litigation." (Appellee's Br. at 35.)

In Oklahoma, there is no distinction between a manufacturer and a retailer for purposes of a product liability suit. *See id* at 1487-88 ("That [the defendant] did not design or manufacture the allegedly defective product is not consequential in a product liability suit in Oklahoma . . . . [T]he seller of a product stands in the same shoes as the manufacturer in an Oklahoma products liability action and is subject to admission of the same evidence regarding alleged defects and the resultant unreasonable danger."); *see*

*also Braden v. Hendricks*, 695 P.2d 1343, 1350 (Okla. 1985) ("In a strict liability action it is immaterial to the plaintiff's case that the defect in the product was not caused by the distributor. The liability of a manufacturer and distributor is co-extensive . . . ."). If the court erred, its error was harmless.

## B.     <u>**"But For" Theory of Causation**</u>

Before Minter delivered his opening statement, counsel for Prime objected to Minter's theory of the case—but for the removal of the solid bar, the accident would not have occurred:

> [Minter's counsel] continues—and I anticipate over my objections in this trial—will continue to argue that but for the removal of the solid bar, this accident would not have . . . occurred. That is improper, it's irrelevant, and that type of an analysis could only go to a negligence claim where the active negligence was the removal of the safety bar. The products liability claim is whether or not that lift was defective as sold with two chains in 1991.

(Appellant's App. Vol. I at 7.) The court overruled Prime's objection. **[Id. at 36]**

In his opening statement, Minter's counsel argued: "[I]f the defendant, Prime Equipment Company, had not altered this lift, it is undisputed that Terry Minter would be able to be at work today instead of sitting trapped in this wheelchair for the rest of his life." (*Id.* at 54-55.) Again, Prime objected and the court overruled. **[See id. at 55]** Prime moved for a mistrial on the basis of Minter's opening statement: "[Minter's counsel] . . . over my objection, spent the entirety of his opening statement arguing a negligence claim that he has dismissed. I can't even count how many times he made the argument that if the bar hadn't been removed, we wouldn't be here today." (*Id.* at 64.) Minter's counsel responded: "This whole lawsuit is about the fact that this machine came

to this dealer with a solid bar, they took it off, and sold it that way. I don't know how many times I have to say that. That's the whole point of our case." (*Id.*) The court overruled Prime's motion for a mistrial. **[Id. at 65]**

Before Minter called Lyle Grider, Prime moved to prohibit Grider from testifying "that but for the removal of the solid bar, the accident wouldn't have occurred" because such an argument would only be relevant in a negligence case, not a products liability case. (Appellant's App. Vol. II at 334-45.) The court agreed:

> [T]he issue in this case is whether or not the chain-entry system as designed was defective or unreasonably dangerous. It is not whether or not it would have been safer with a solid bar.
>
> So I agree with defendants that Mr. Grider should not be allowed to testify as to the 'but for removal of the solid bar the accident would not have occurred' because that gets into a weighing of which is safer and that's not the issue. The issue is, was it unreasonably dangerous with the chain-entry system . . . . [S]o he will not be allowed to testify and weigh the relative safety of each type of those machines.

(*Id.* at 337-38.) The court later clarified:

> [Grider] will be able to testify as to the safety of the machine as it existed at the time of the accident without a relative weighing of the safety of a machine with the solid guardrail. So he will not be allowed to testify that but for removal of the solid guardrail, the machine became unsafe.
>
> His testimony will be restricted to . . . the relative safety of the machine as it existed at the time of the accident and as it was put into the stream of commerce with . . . the chain-rail system on it.

(*Id.* at 365-66.) Before closing arguments, the court reiterated its earlier ruling:

> [T]he question is whether the product as Prime Manufacturing was using it and introduced it into the stream of commerce . . . was defective.
>
> I do not believe that the law allows for a weighing of, would it have been a better product if it had a solid guardrail versus the system that it had. The question is whether that in and of itself is defective.

(Appellant's App. Vol. III at 549-50.)

Minter contends the court erred in excluding his "but for" theory of the case because "[p]roving products liability with but for causation is endorsed by many courts, including the Oklahoma Supreme Court." (Appellant's Opening Br. at 18.) Prime contends the court correctly excluded Minter's "but for" theory because it is not a proper theory of strict liability. Prime argues: "A central flaw in Mr. Minter's repeated 'but for' arguments to the jury was that it focused the jury on the wrong predicate. The proper 'but for' causation inquiry is 'but for' an alleged *defect* in the product, not an alleged *act* by Prime." (Appellee's Br. at 18.) "'[B]ut for' causation is a non sequitur. What matters is causation by the *defect*." (*Id.* at 19.)

We agree with Prime. As previously discussed, in order to succeed on his claim, Minter had to prove the lift was defective, the defect rendered the lift unreasonably dangerous, and his injuries were caused by the defective lift. Minter's "but for" theory was not relevant to any of these elements and improperly focused the jury on Prime's conduct rather than the lift's alleged defect.

In *Bruce v. Martin-Marietta Corp.*, we explained: "As to strict liability, the question is whether the [product] was sold in a defective condition unreasonably dangerous to the user. The negligence question is whether [the defendant] exercised reasonable care." 544 F.2d 442, 445 (10th Cir. 1976) (applying Oklahoma law) (quotations omitted). Even if the jury concluded Minter would not have been injured but for Prime's removal of the guardrail, the strict liability question would remain. In other words, whether Prime's actions were the "but for" cause of Minter's injury bears on the

- 12 -

question of whether Prime was negligent, not on the question of whether the lift was defective and unreasonably dangerous.

Under Oklahoma law:

> [T]he fact that a product could be made safer by adding a safety device is not, without more, enough to establish that the product is defective as a manufacturer does not have a legal duty to produce a product incorporating only features representing the ultimate in safety.

*Wicker ex rel. Estate of Wicker v. Ford Motor Co.*, 393 F.Supp.2d 1229, 1236 (W.D. Okla. 2005) (quotations omitted). "Only when a defect in the product renders it less safe than expected by the ordinary consumer will the manufacturer be held responsible." *Lamke v. Futorian Corp.*, 709 P.2d 684, 686 (Okla. 1985); *see also Gaines-Tabb*, 160 F.3d at 624-25 (same); *Woods v. Fruehauf Trailer Corp.*, 765 P.2d 770, 775 (Okla. 1988) ("In this case the evidence that the tank could have been made 'safer' does not establish that it was less safe than would be expected by the ordinary consumer."). Even though the lift might have been safer with the solid guardrail, as Prime acknowledges, that does not mean the lift was defective and unreasonably dangerous. Minter's "but for" theory, even if allowed by the court and adopted by the jury, would not have proven his case. The court did not err in excluding it.[12]

C.     **Requests for Admission**

Minter called Jerry Segovia, a sales representative for Prime, as part of his case-in-chief. **[Vol. I at 119, 120]** Minter asked Segovia: "Would you agree that a solid

---

[12] Moreover, based on our review of the trial transcript, we agree with Prime that, if there was error, it was harmless because the jury was allowed to hear substantial argument and evidence relating to Minter's "but for" theory notwithstanding the court's ruling on Prime's motion in limine.

guardrail on the platform of a scissor lift reduces the danger of falls for lift operators who might otherwise forget to latch a chain-link entry properly?" (Appellant's App. Vol. I at 142.) Segovia responded: "Yes." (*Id.*) Minter then sought to introduce into evidence two of Prime's responses to Minter's requests for admission:

> REQUEST NO. 13: Admit that a solid guardrail on the upper perimeter of the platform of a scissor lift reduces the risk of falls for lift operators who might otherwise forget to latch a chainlink entry or fail to latch a chainlink entry properly.
>
> ANSWER: Defendant objects to Request No. 13 because the request is compound and assumes facts not in evidence in this case. Without waiving said objections, admitted.
>
> REQUEST NO. 14: Admit that a solid guardrail on the platform of a scissor lift reduces the danger of falls for lift operators who might otherwise forget to latch a chainlink entry or fail to latch a chainlink entry properly.
>
> ANSWER: Defendant objects to Request No. 14 because the request is compound and assumes facts not in evidence in this case. Without waiving said objection, admitted.

(Appellant's App. Vol. IV at 719-20). **[Vol. I at 142]** Prime objected to the discovery responses as cumulative. **[Id. at 143]** Minter argued that because Segovia was not testifying as a designated corporate representative pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, his answers were insufficient to bind Prime and thus, the requests for admission were not cumulative.[13] **[Id. at 144]** The court sustained the

---

[13] Rule 30(b)(6), relating to depositions by oral examination, states in pertinent part:

> In its notice or subpoena, a party may name as the deponent a public or private corporation . . . and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf . . . . The persons designated must

objection "partially because it wasn't raised before now and partially because I'm not sure that this witness is the appropriate one to do that." (Appellant's App. Vol. I at 148.)

After Segovia's testimony was complete, Minter again moved to admit the requests for admission. **[Id. at 158]** The court sustained Prime's objection explaining:

> After looking at the request for admission again, I'm not sure that the admission was inconsistent with what the witness testified to. He testified as a witness on behalf of Prime as their corporate representative, and his statements on the witness stand were what is encompassed within the request for admission.

(*Id.* at 158-59.) The next day, Minter again moved to admit the requests for admission and presented additional authority to the court in support of his position. **[Vol. II at 220]** The court denied Minter's motion. **[Id. at 223]** Minter again moved unsuccessfully to admit Prime's admissions after presenting all of his testimony. **[See Vol. II at 411]**

Minter contends the court erred in excluding Prime's answers to Minter's requests for admission because Segovia's testimony could not bind Prime. Prime contends it was not error to exclude its responses to Minter's requests for admission because they were irrelevant and could only mislead the jury. Prime also asserts "even if the requests for admissions were properly admissible, the Court's failure to admit them was not reversible error. No witness from Prime . . . took a position any different from the only logical position it could take with regard to these inquiries by Mr. Minter." (Appellee's Br. at 42.)

Under Rule 36 of the Federal Rules of Civil Procedure, "[a]ny matter admitted . . .

---

testify about information known or reasonably available to the organization.

- 15 -

is conclusively established unless the court on motion permits withdrawal or amendment of the admission." This rule "serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." Fed. R. Civ. P. 36(a) advisory committee's note (1970). "In most cases . . . there should be a clear relationship between the request for admissions and a pre-trial order . . . . Once admitted, the parties are bound thereby and by stipulations included in a pre-trial order." *Keen v. Detroit Diesel Allison*, 569 F.2d 547, 554 (10th Cir. 1978); *see also Champlin v. Okla. Furniture Mfg. Co.*, 324 F.2d 74, 76 (10th Cir. 1963) ("[Rule 36] is most advantageously used . . . prior to the pretrial conference, and the facts established by the answers to the request for admission may . . . be incorporated into the pre-trial order as undisputed material facts in the case . . . ."); *see, e.g., Am. Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1119 (5th Cir. 1991) (holding the district court erred in excluding defendant's responses to plaintiff's requests for admissions where plaintiff "included the admissions in its pretrial order as 'undisputed issues of fact,' introduced the admissions into evidence at trial and relied on them in support of its case").

Here, Minter did not include Prime's requests for admissions in the pretrial order, which was filed one day before trial began.[14] **[Vol. I at xxxi]** We have held "[t]he trial

---

[14] Minter claims it designated these discovery responses one week before trial. **[Appellant's Opening Br. at 15; Vol. IV at 707]** The record does not indicate whether these discovery responses were filed. If they were filed, they were filed before the pretrial order and were not expressly incorporated in the pretrial order.

court may properly reject contentions of parties that raise issues at trial which are not included in a pre-trial order." *Keen*, 569 F.2d at 554. "[A]mendment of a pre-trial order formulating issues will be permitted during trial only if necessary to prevent manifest injustice." *Id.* Minter did not seek to amend the pretrial order and does not argue it was manifestly unjust for the court to exclude Prime's admissions.

Even if we were to conclude the court abused its discretion in excluding Prime's discovery responses, the error would not require reversal because Segovia's testimony was consistent with Prime's discovery responses and Prime has never taken a contrary position.

**AFFIRM.**

Entered by the Court:

**Terrence L. O'Brien**
United States Circuit Judge