HENRY COKE MORGAN, JR., SENIOR UNITED STATES DISTRICT JUDGE
This matter is before the Court on the following three (3) Motions filed by Defendant Old Dominion University ("Defendant" or "ODU"): (1) Motion to Compel Plaintiff's Production of Written Discovery Answers and Responses, Doc. 43 ("Motion to Compel Plaintiff"); (2) Motion to Compel SurvJustice, Inc.'s Response to Subpoena Duces Tecum, Doc. 48 ("Motion to Compel SurvJustice"); and (3) Motion to Compel Jane Doe's Parents' Response to Subpoena Duces Tecum, Doc. 50 ("Motion to Compel Plaintiff's Parents"). On December 6, 2017, the Court convened a hearing and heard argument on the Motions. The Court RESERVED RULING on the Motions at that time, and ORDERED Plaintiff and Non-Parties SurvJustice and Plaintiff's Parents to produce the withheld documents for an in camera inspection by the Court. See Doc. 76 at 2.
All three (3) Motions to Compel arise from the Parties' disagreement as to whether a victim-advocate privilege applies to the withheld discovery in this case. At the December 6, 2017 hearing, the Court FOUND that a qualified privilege exists for communications between a sexual assault victim and his or her advocate. The privilege can be overcome if, on review, the Court determines that the potential relevance of the communications outweighs the public policy interest in keeping them confidential. By Order dated December 11, 2017, the Court GRANTED the Motions to Compel IN PART, and attached copies of the emails that were subject to production. Doc. 85 at 1. The Court ORDERED Plaintiff to produce two (2) additional documents for its review, an image file and a Google Document. See id. at 2. Plaintiff produced the image file but was unable to retrieve the relevant version of the Google Document. See Doc. 96.
Having reviewed the image file produced by Plaintiff, the Court hereby GRANTS the Motion to Compel Plaintiff, Doc. 43, and Motion to Compel SurvJustice, Doc. 48, as to one (1) additional email, which is attached to this Order and is hereby SEALED . The Court DENIES the Motions to Compel as to the remaining withheld documents. The Court explains its ruling in further detail below.
I. BACKGROUND
On May 3, 2017, the Court entered a Rule 26(f) Pretrial Order for this matter, which anticipated a trial date before December 8, 2017 and a discovery completion date of September 28, 2017. Doc. 22. The deadlines in that Order were stayed on May 12, 2017, Doc. 27, pending the outcome of Defendant's Motion to Dismiss Amended Complaint, Doc. 23 ("Motion to Dismiss"). On June 22, 2017, the Court held a hearing and denied the Motion to Dismiss. Doc. 32. Accordingly, the Court lifted the stay of discovery and directed the Clerk to conduct a Rule 16(b) Scheduling Conference at the conclusion of the June 22, 2017 hearing. Id. Pursuant to the Rule 16(b) Scheduling Order, Plaintiff's discovery was to be completed by December 12, 2017, and Defendant's discovery was to be completed by January 12, 2018. See Doc. 33. The Court has since granted Plaintiff an extension until January 12, 2018 during which to complete her depositions. Doc. 76 at 1. In order to protect Plaintiff's identity, the Court gave her leave to proceed under a pseudonym, Doc. 8, and entered a Stipulated Protective Order, Doc. 42.
During discovery, Defendant requested that Plaintiff produce, among other things, all emails between Plaintiff (and persons acting on her behalf) and her victim advocate, *749 Laura Dunn, between October 25, 2014 and January 5, 2015. See Doc. 44 at 7-8. Plaintiff's privilege log indicates that there are more than one hundred fifty (150) such emails. See id. at 8. Plaintiff objected to producing these emails, on the grounds that communications between sexual assault victims and their advocates are privileged. Id.; see, e.g., Doc. 44, Ex. 2 at 44 (invoking "the victim-advocate privilege (whether by statute or otherwise, including, but not limited to, Va. Code Ann. § 63.2-104.1 )"). Defendant subpoenaed the same documents from Plaintiff's Parents and SurvJustice, who also objected under the victim-advocate privilege. See Doc. 52 at 3-4; Doc. 53 at 3-4.
Defendant filed the instant Motions to Compel on November 3, 2017. Docs. 43, 48, 50. SurvJustice, Plaintiff's Parents, and Plaintiff each responded in opposition to the Motions to Compel on November 17, 2017. Docs. 62, 63, 64. Defendant replied in further support of the Motions to Compel on November 22, 2017. Docs. 68, 69, 70. The Court convened a hearing on the Motions on December 6, 2017. Doc. 75.
II. LEGAL STANDARDS
"The Federal Rules contemplate the broadest discovery possible in the search of the truth." Kline v. Martin, 345 F.Supp. 31, 32 (E.D. Va. 1972). Parties may obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Though information "need not be admissible in evidence to be discoverable," the discovery must be
proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.
Id.; see also Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries.").
A party seeking discovery may move the Court to compel answers to interrogatories and production if the nonmoving party objects or fails to respond. Fed. R. Civ. P. 37(a)(3)(B). Prior to filing a motion to compel, the parties must meet and confer to attempt to resolve the dispute without the Court's intervention. Fed. R. Civ. P. 37(a)(1). On a motion to compel, "the burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted." Singletary v. Sterling Transp. Co., 289 F.R.D. 237, 241 (E.D. Va. 2012).
A party may refuse to disclose otherwise discoverable material by asserting a privilege. Fed. R. Civ. P. 26(b)(5). In a civil case involving a federal claim, privilege is governed by the federal common law, unless otherwise provided by the U.S. Constitution, a federal statute, or rules prescribed by the Supreme Court of the United States. See Fed. R. Evid. 501. "Evidentiary privileges in litigation are not favored." Herbert v. Lando, 441 U.S. 153, 175, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). A court should only create and apply a privilege if it "promotes sufficiently important interests to outweigh the need for probative evidence." Univ. of Pa. v. E.E.O.C., 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (quoting Trammel v. United States, 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) ).
III. DISCUSSION
A. Victim-Advocate Privilege
Plaintiff objects to the production requests at issue here on the basis of what she has termed a "victim-advocate privilege."
*750 [1] In Plaintiff's Response to Defendant's First Request for Production of Documents, Doc. 44, Ex. 3, Plaintiff asserts the victim-advocate privilege, "whether by statute or otherwise, including, but not limited to," Section 63.2-104.1 of the Virginia Code. Id. at 1-2. This provision states:
In order to ensure the safety of adult and child victims of domestic violence, dating violence, sexual assault, or stalking, ... and their families, programs and individuals providing services to such victims shall protect the confidentiality and privacy of persons receiving services.
Va. Code Ann. § 63.2-104.1(A) (West 2017). Programs and individuals providing such services shall not "[d]isclose any personally identifying information or individual information collected in connection with services requested, utilized, or denied," unless "compelled by statutory or court mandate." Id. § 63.2-104(B)(1) and (C).
1. Defendant's Position
Defendant argues that no such privilege exists, and that the Court should not create one in this case. See Doc. 44 at 11 ("[Defendant] could find no authority from the Fourth Circuit (or elsewhere in the federal civil judiciary) creating or recognizing such a privilege."). Defendant argues that Plaintiff's citation to the Virginia Code is misplaced, because "this Title IX action involves a federal, not a state, claim, and, thus, federal law supplies the rules of decision." Id. Defendant further argues that, even if state law did apply, the provision Plaintiff cited does not create a victim-advocate privilege. Defendant asserts that "the only federal court to address the question of a privilege under Virginia Code § 63.2-104.1 has specifically held that the provision created no privilege." Id. at 12 (citing Eramo v. Rolling Stone, Inc., 314 F.R.D. 205, 212-13 (W.D. Va. 2016) ).
Defendant insists that a court should not "create and apply an evidentiary privilege unless it 'promotes sufficiently important interests to outweigh the need for probative evidence.' " Doc. 68 at 3 (quoting Univ. of Pa., 493 U.S. at 189, 110 S.Ct. 577 (quoting Trammel, 445 U.S. at 51, 100 S.Ct. 906 ) ). Defendant further asserts that Plaintiff has placed her communications with SurvJustice into issue by "affirmatively fil[ing] as Exhibit 3 to her Amended Complaint a December 15, 2014, communication between herself and one of her victim-advocates." Id. Defendant argues that "[b]ecause the plaintiff has voluntarily placed all of these matters in issue, they are relevant and merit a full and fair inquiry on the part of [Defendant]." Id. Defendant insists that access to these communications "is essential for its defense against the plaintiff's Title IX allegations[,] the plaintiff's demand for monetary damages and injunctive relief, and the accrual of the plaintiff's Title IX claim for the purposes of [Defendant's] statute of limitations defense." Id. at 4.
2. Plaintiff's Position
In opposition,[2] Plaintiff acknowledges that federal law governs the privilege issues in this case, but notes that no constitutional provision, federal statute, or Supreme Court decision provides the necessary guidance here. See Doc. 62 at 4. Accordingly, this Court has the authority "to define a new privilege by interpreting common law principles in light of reason *751 and experience." Id. at 4-5 (citing Fed. R. Evid. 501 ; Jaffee v. Redmond, 518 U.S. 1, 8, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) ). Given that authority, Plaintiff argues that the Court should recognize a victim-advocate privilege in this case, for the same reasons the Supreme Court recognized a psychotherapist-patient privilege in Jaffee v. Redmond.See id. at 5. In Jaffee, the Supreme Court articulated four (4) reasons for recognizing the privilege:
1. Successful psychotherapy "depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." Jaffee, 518 U.S. at 10, 116 S.Ct. 1923.
2. The privilege "serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem," as "[t]he mental health of our citizenry ... is a public good of transcendent importance." Id. at 11, 116 S.Ct. 1923.
3. "[T]he likely evidentiary benefit that would result from the denial of the privilege is modest.... Without a privilege, much of the desirable evidence to which litigants ... seek access-for example, admissions against interest by a party-is unlikely to come into being. This unspoken 'evidence' will therefore serve no greater truth-seeking function than if it had been spoken and privileged." Id. at 11-12, 116 S.Ct. 1923.
4. "All 50 States and the District of Columbia have enacted into law some form of psychotherapist privilege." Id. at 12, 116 S.Ct. 1923.
First, Plaintiff argues that, like the psychotherapist-patient privilege, the victim-advocate privilege depends on confidentiality. Confidentiality "is essential to ensuring that the sexual assault survivor approaches the advocate in the first place," and it "is needed to ensure that the victim feels safe sharing the details of his or her situation with the advocate so that the advocate can ensure that the victim's rights are being protected." Doc. 62 at 6. Second, Plaintiff argues that the privilege here would "serve[ ] the public good by promoting public safety." Id. at 7. By "increasing the likelihood that gender violence is reported," the privilege would ensure safer communities. Id. at 8. Third, Plaintiff argues that, like in Jaffee , the evidentiary benefit in rejecting the privilege would be minimal, because doing so would chill communications between victims and their advocates. Id. at 9. "Thus, the exact discovery that ODU seeks would not exist because Ms. Doe would not have felt comfortable engaging in open communications with SurvJustice," if she believed those communications would not be privileged. Id. at 9-10. Finally, Plaintiff argues that "the majority of states and the District of Columbia have enacted statutes that afford some form of confidential protections in the victim-advocate relationship." Id. at 10-11. In this case, Plaintiff "expected that the confidentiality provided by her own state's statute, the state in which she was violently raped, the state in which ODU is located, and the state in which [Plaintiff] exchanged privileged, confidential communications with SurvJustice as she attempted to recover from being assaulted, would protect those communications." Id.
Plaintiff further argues that the Eramo case cited by Defendant is inapposite to the facts of this case. In Eramo, while the Western District of Virginia "declined to implement a victim-advocate privilege under Va. Code § 63.2-104.1, [it] did not hold that no such privilege exists." Id. at 12. Rather, the court "found that even if the *752 privilege does exist, the third party from whom documents were sought had 'waived such privilege by voluntarily disclosing the contents of her communications with Eramo and UVA to defendants.' " Id. at 12-13 (quoting Eramo, 314 F.R.D. at 213 ).
3. The Court Recognizes a Victim-Advocate Privilege
The Court agrees with Plaintiff that communications between sexual assault victims and their advocates should be privileged. The Supreme Court has held that recognition of a testimonial privilege "may be justified ... by a 'public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' " Jaffee, 518 U.S. at 9, 116 S.Ct. 1923 (quoting Trammel v. United States, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) ). This Court FINDS that protecting confidential communications between victims and their advocates "promotes sufficiently important interests to outweigh the need for probative evidence," and thus that a victim-advocate privilege is necessary for the same reasons as the psychotherapist-patient privilege in Jaffee. Id. at 9-10, 116 S.Ct. 1923 (quoting Trammel, 445 U.S. at 51, 100 S.Ct. 906 ).
First, the privilege is "rooted in the imperative need for confidence and trust." Id. at 10, 116 S.Ct. 1923 (quoting Trammel, 445 U.S. at 51, 100 S.Ct. 906 (1980) ). For the victim advocate to be effective, the victim must "make a frank and complete disclosure of facts, emotions, memories, and fears" regarding the assault. See id. Only with such a comprehensive understanding can the advocate ensure the victim has access to the information and resources he or she needs in the aftermath of a sexual assault. As with the psychotherapist-patient relationship that was found to be privileged in Jaffee, the success of the victim-advocate relationship is threatened by even "the mere possibility of disclosure." Id. at 10, 116 S.Ct. 1923. Thus, private interests counsel in favor of keeping victim-advocate communications confidential.
A victim-advocate privilege also serves public ends. The Jaffee Court decided that a psychotherapist-patient privilege is warranted, because "[t]he mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." Id. at 11, 116 S.Ct. 1923. The attorney-client privilege is required to "promote broader public interests in the observance of law and administration of justice." See id. (quoting Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ). The victim-advocate privilege furthers each of these interests. Professional mental health services and other accommodations relating to the victim's mental health are among the resources that flow from a successful victim-advocate relationship.[3] And encouraging full and frank disclosure within the victim-advocate relationship promotes "the observance of law and administration of justice," by increasing the likelihood that sexual assaults will be reported, investigated, *753 and prosecuted. Considering how widespread and yet underreported sexual violence apparently is in the United States today, encouraging victim speech is especially important.
On the other side of the equation, denying the victim-advocate privilege offers only minimal, if any, evidentiary benefit. As in the psychotherapist-patient or attorney-client relationship, "confidential conversations between [victims and their advocates] would surely be chilled" if the privilege were denied. Id. at 11-12, 116 S.Ct. 1923. Especially given the advocate's role in helping the victim to recognize and enforce legal rights and remedies, it is unlikely that victims would disclose to their advocate any information that could potentially be used against them in future litigation, if they knew those communications would not be privileged. Cf. id. at 12, 116 S.Ct. 1923 ("Without a privilege, much of the desirable evidence to which litigants such as petitioner seek access-for example, admissions against interest by a party-is unlikely to come into being. This unspoken 'evidence' will therefore serve no greater truth-seeking function than if it had been spoken and privileged."), Thus, the amount of evidence that, but for the privilege, would be available for discovery is likely very small.
Finally, forty (40) states and the District of Columbia have enacted some type of protection for victim-advocate communications.[4] See Jaffee, 518 U.S. at 12-13, 116 S.Ct. 1923 ("We have previously observed that the policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one." (citing Trammel, 445 U.S. at 48-50, 100 S.Ct. 906 ; United States v. Gillock, 445 U.S. 360, 368 n.8, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980) ) ). This not only suggests that " 'reason and experience' support recognition of the privilege," id. at 13, 116 S.Ct. 1923, but it also highlights the disruptive effect that ignoring the privilege would have on victim-advocate communications across the country. As in Jaffee, "any State's promise of confidentiality would have little value if the patient were aware that the privilege would not be honored in a federal court." Id.
In light of these considerations, the Court FINDS that communications between *754 a sexual assault victim and his or her advocate are privileged, pursuant to Federal Rule of Evidence 501 and the Supreme Court's decision in Jaffee . As most of the state laws indicate, however, the privilege is not absolute. See, e.g., Va. Code Ann. § 63.2-104.1(C) (noting that release of victim-advocate communications may be compelled by statutory or court mandate).[5] Accordingly, the Court further FINDS that communications otherwise protected under this privilege may be released, if the Court determines that their theoretical relevance outweighs the public policy in favor of keeping them confidential. It is the Court's duty to review in camera the content of the communications before making this determination.
The Court notes that the analysis required under a qualified evidentiary privilege, the Federal Rules of Civil Procedure, and the Virginia confidentiality statute are essentially the same. For example, although the Court is not bound by the Virginia statute in this case, a Virginia state court considering whether victim-advocate communications will be produced must first make a determination that such communications' probative value outweighs the public and private interests in keeping them confidential. And Rule 26(b)(1) of the Federal Rules of Civil Procedure limits the scope of discovery to matters that are "relevant to any party's claim or defense and proportional to the needs of the case, considering[, among other factors,] the parties' relative access to relevant information, ... the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1) (emphasis added). Even without finding that the communications between Plaintiff and her advocate are covered by an evidentiary privilege, then, the Court would have to determine whether the theoretical relevance of the withheld emails is proportional to the needs of the case, considering the significant public policy interests discussed above.
4. Analysis
The withheld documents in this case were produced to the Court on December 7, 2017. The Court has reviewed the content of each email for material that would be so relevant to Defendant's case as to outweigh the interest in confidentiality as to that material. Based upon its review, the Court determined that the following emails are subject to production for the following reasons:
1. Plaintiff[6]
a. Emails 00100, 00104, 00115-Contain relevant information regarding Plaintiff's retention of an attorney.
b. Emails 00099, 00107, 00134-Contain relevant information regarding Defendant's response to the alleged attack.
*755 c. Emails 00059, 00117, 00132-Contain relevant information regarding Plaintiff's efforts to obtain accommodations after the alleged attack.
d. Email 00037-The substance of this email consists of communications between Ms. Dunn and a third party, and thus is not a protected victim-advocate communication.
e. Email 00062-Contains link to an informational congressional hearing on the same subject matter as this case. While Defendant may find the hearing to be only marginally relevant, this email does not otherwise contain sensitive or confidential information and thus may be produced.
2. Plaintiff's Parents
a. Email 0000003, 000012, 000018, and 000070-Contain relevant information regarding Defendant's response to the alleged attack.
b. Email 0000006-The substance of this email consists of communications between Ms. Dunn and a third party, and thus is not a protected victim-advocate communication.
c. Email 0000096-Contains relevant information regarding Plaintiff's beliefs about the viability of her claim.
d. Email 0000155-The substance of this email consists of a communication from Defendant to Plaintiff, and thus is not a protected victim-advocate communication. The Court notes that the substantive portion of this email has already been produced as Exhibit 3 to Plaintiff's Amended Complaint, Doc. 21.
3. SurvJustice
a. Email 000029 and attached image-Contains relevant information regarding Plaintiff's efforts to obtain accommodations after the alleged attack.
To the extent that they are not duplicates of the above emails, the Court FINDS that the remaining emails are protected by the victim-advocate privilege.
B. Waiver
Defendant argues that Plaintiff has waived any privilege or confidentiality by placing in issue the communications demanded and by voluntarily disclosing the content of some of those communications. See Doc. 68 at 8-9. Defendant is referring to the fact that Plaintiff attached Exhibit 3 to her Amended Complaint, which Exhibit consists of an email between Plaintiff and her advocate (now attorney) Ms. Dunn. Exhibit 3 shows that Plaintiff forwarded to Ms. Dunn two (2) emails sent to her by an ODU representative. The first email, dated November 6, 2014, informed Plaintiff, "A report of potential sexual harassment, sexual misconduct and/or sexual violence has been made and you are receiving this message because of your direct or indirect involvement." Doc. 21, Ex. 3 at 1. The same email went on to explain how the University would be following up on the report, and how Plaintiff could file a complaint if she wished. Id. at 1-2. The second email included in Exhibit 3, also forwarded by Plaintiff to Ms. Dunn, was a request from the ODU representative to recall the first email. Neither email includes any text written by Plaintiff herself.
Plaintiff's Exhibit 3 to her Amended Complaint does not constitute a waiver of her interest in keeping her communications with her advocate confidential. The substantive content of Exhibit 3 consists of two (2) email communications from one (1) of Defendant's representatives. The fact *756 that Plaintiff chose to file those emails in the form of a forwarded email to her advocate-without disclosing any of her own words or her advocate's words-cannot reasonably constitute a voluntary disclosure of her own substantive communications with her advocate. The Court FINDS that Plaintiff did not waive the confidentiality of her communications with SurvJustice and Ms. Dunn by virtue of filing Exhibit 3 with her Amended Complaint.
C. Protective Order
Finally, Defendant argues that the communications at issue should be discoverable, because the interest in keeping the communications confidential is sufficiently preserved by the Stipulated Protective Order entered in this case. See Doc. 68 at 10-11. Defendant represents that it intends to abide by the terms of the Protective Order in handling the requested documents, id. at 10, which include keeping confidential any identifying information about Plaintiff. This argument fails to recognize that Plaintiff has a substantial interest in keeping her communications with her advocate confidential from ODU itself, whom she perceives to have failed her since the alleged attack. Plaintiff's Amended Complaint alleges significant damage suffered because Defendant's police, housing, and academic personnel allegedly were deliberately indifferent to her sexual assault. If what Plaintiff alleged is true, Defendant would reasonably be at the top of the list of parties from whom Plaintiff wanted to keep her private communications with her advocate safe. Thus, the Court FINDS that the Stipulated Protective Order does not sufficiently protect Plaintiff's interest in keeping the requested communications confidential, as it still allows Defendant to view these communications.
IV. CONCLUSION
For the foregoing reasons, and pursuant to its authority under the Federal Rules of Evidence and applicable Supreme Court precedent, the Court FINDS that communications between a sexual assault victim and his or her advocate are protected by a qualified evidentiary privilege. See Fed. R. Evid. 501 ; Jaffee, 518 U.S. 1, 116 S.Ct. 1923. The Court has reviewed the withheld documents, and GRANTS Defendant's Motions to Compel, Docs. 43, 48, 50, IN PART, as to the emails attached to its December 11, 2017 Order and to this Order. The Court DENIES the Motions to Compel as to the remaining emails.
The Clerk is REQUESTED to send a copy of this Order to all counsel of record.
It is so ORDERED .

The reader will note that Plaintiff's Parents and SurvJustice also objected on the basis of this privilege, and that the Court's analysis applies equally to the objections of all three (3) parties.

Plaintiff's opposition to Defendant's Motion to Compel Plaintiff incorporates the arguments made in SurvJustice's opposition to Defendant's Motion to Compel SurvJustice, See Doc. 64 at 1.

See, e.g., Commentary to Haw. Rev. Stat. Ann. § 626-1, R. 505.5 ("This rule ... encourages and protects the counseling of emotionally distressed victims of violent crimes by according privilege status to confidential communications made in the course of the counseling process. In adopting a similar law, ... the New Jersey Legislature declared that the "[c]ounseling of victims is most successful when the victims are assured [that] their thoughts and feelings will remain confidential and will not be disclosed without their permission.' The present provision proceeds upon just such a policy basis." (citing N.J. Stat. Ann. § 2A:84A-22.13 ) ); Utah Code Ann. § 77-38-202 (West 2017) ("It is the purpose of this act to enhance and promote the mental, physical and emotional recovery of victims of sexual assault and to protect the information given by victims to sexual assault counselors from being disclosed.").

Ala. Code § 15-23-42 (2017) ; Alaska Stat. Ann. §§ 18.66.200, 24.65.200 (West 2017) ; Ariz. Rev. Stat. Ann. § 13-4430 (2017); Cal. Evid. Code §§ 1035.4, 1035.8 (West 2017) ; Colo. Rev. Stat. Ann. § 13-90-107(k) (West 2017); Conn. Gen. Stat. Ann. § 52-146k(b) (West 2017); D.C. Code Ann. § 14-312 (West 2017) ; Fla. Stat. Ann. § 90.5035(2) (West 2017); Ga. Code Ann. § 24-5-509(b) (West 2017); Haw. Rev. Stat. Ann. § 626-1, R. 505.5 ; 735 Ill. Comp. Stat. Ann. 5/8-802.1(d) (West 2017); Ind. Code Ann. § 35-37-6-9 (West 2017) ; Iowa Code Ann. § 915.20A (2017); Ky. Rev. Stat. Ann., Ky. R. Evid. 506(b) ; Me. Rev. Stat. Ann. tit. 16, § 53-A(2) (2017) ; Mass. Gen. Laws Ann. ch. 233, § 20J (West 2017) ; Mich. Comp. Laws Ann. § 600.2157A(2) (West 2017); Minn. Stat. Ann. § 595.02(k) (West 2017); Mo. Ann. Stat. § 455.003 (West 2017) ; Mont. Code Ann. § 26-1-812 (West 2017) ; Neb. Rev. Stat. Ann. § 29-4303 (West 2017) ; Nev. Rev. Stat. Ann. § 49.2547 (West 2017) ; N.H. Rev. Stat. Ann. § 173-C:2 (2017) ; N.J. Stat. Ann. § 2A:84A-22.15 (West 2017) ; N. M. Stat. Ann. § 31-25-3 (West 2017) ; N.Y. C.P.L.R. § 4510(b) (McKinney 2017); N.C. Gen. Stat. Ann. § 8-53.12(b) (West 2017); N.D. Cent. Code Ann. § 14-07.1-18 (West 2017); Okla. Stat. Ann. tit. 74, § 18p-3(B)(1) (West 2017); Or. Rev. Stat. Ann. § 409.273(2)(b) (West 2017); 42 Pa. Stat. And Cons. Stat. § 5945.1(b) (West 2017); S.D. Codified Laws § 25-10-28 (2017) ; Tenn. Code Ann. § 36-3-623 (West 2017) ; Tex. Gov't Code Ann. § 420.071 (West 2017) ; Utah Code Ann. § 77-38-204 (West 2017) ; Vt. Stat. Ann. tit. 12 § 1614 (West 2017) ; Va. Code Ann. § 64.2-104.1 (West 2017); Wash. Rev. Code Ann. § 5.60.060(7) (West 2017); W. Va. Code Ann. § 48-26-701 (West 2017) ; Wis. Stat. Ann. § 905.045(2) (West 2017); Wyo. Stat. Ann. § 1-12-116 (West 2017).

See also, e.g., N.C. Gen. Stat. Ann. § 8-53.2 (West 2017) ("[The Court] shall compel disclosure [of victim-advocate communications] if the court finds, by a preponderance of the evidence, a good faith, specific, and reasonable basis for believing that (i) the [documents] sought contain information that is relevant and material to factual issues to be determined in a civil proceeding ..., (ii) the evidence is not sought merely for character impeachment purposes, and (iii) the evidence sought is not merely cumulative of other evidence or information available or already obtained.").

The Bates numbering in Plaintiff's email production differs from Non-Parties Plaintiff's Parents and SurvJustice, in that a single email may have more than one Bates number associated with it, if the email is more than one page long. The Court will identify the relevant emails in Plaintiff's production by the Bates number on the first page of the email, and the reader and the Parties may assume that the Court is referring to the entire email.